IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ROBERT A. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-01712-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| SUPERINTENDENT BRIAN THOMPSON, WHITMAN, PRISON COUNSELOR; DEBRA K. SAUERS, MICHAEL J. MAHLMEISTER, ERIC PERNETT, LT. MCFADDEN, JOHN DOES NO. 1-10, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS JAILERS/CORRECTIONS OFFICERS/HOUSING UNIT DEPUTIES/SHERIFF'S DEPUTIES/SUPERVISORS/IN-CHARGE DEPUTIES WITH THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, WHO WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Robert Love ("Plaintiff") initiated this civil rights action pursuant to 42 U.S.C. § 1983 asserting a claim for violation of the Fourteenth Amendment due process clause and a claim for violating the Eighth Amendment for subjecting him to cruel and unusual punishment against the following Defendants: State Correctional Institution ("SCI") Mercer Superintendent Brian Thompson ("Superintendent Thompson"), SCI Mercer prison parole officer Eric Pernett

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

("P.O. Pernett"), SCI Mercer Deputy Superintendent for Centralized Services and Program Review Committee member Debra K. Sauers ("Deputy Superintendent Sauers"), SCI Mercer Deputy Superintendent for Facilities Management and Program Review Committee member Michael J. Mahlmeister ("Deputy Superintendent Mahlmeister"), SCI Mercer prison counselor "Whitman," ("Counselor Whitman"), SCI Mercer prison supervisor "Lt. McFadden," ("Lt. McFadden") and John Doe Nos. 1-10 various supervisors and employees of SCI Mercer who allegedly violated Plaintiff's constitutional rights.[2] All of the named Defendants moved jointly to dismiss Plaintiff's complaint. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion is granted.

II. **BACKGROUND**[3]

On July 31, 2012, Plaintiff was arrested for criminal trespass, grand larceny and heroin possession in New York state. He was sentenced to six months imprisonment and five years of county probation and was released early for good behavior on November 30, 2012. After his release, Plaintiff moved to Mercer County, Pennsylvania. He was assigned to a probation officer in Mercer County and in July 2013, he enrolled in a drug maintenance program at a methadone clinic and began treatment for post-traumatic stress disorder ("PTSD") relating to his past military service in Iraq. While Plaintiff was receiving treatment at the methadone clinic, he allegedly violated his probation by allegedly committing retail theft and driving under the influence and was arrested on December 30, 2013 by Mercer County probation. After his arrest, Mercer County probation officers transported Plaintiff to SCI Mercer.

---

[2] Plaintiff also named Paul G. Theriault, a member of the Program Review Committee at SCI Mercer as a Defendant, but this Defendant was voluntarily dismissed. *See* Stip. of Dismissal [ECF No. 17].

[3] At the motion to dismiss stage, all of the well-pleaded facts are accepted as true and all reasonable inferences are drawn in the light most favorable to Plaintiff.

After arriving at SCI Mercer, Plaintiff did not receive diagnostic testing for physical, mental or emotional problems and was not evaluated for drug or alcohol dependency. Plaintiff informed prison employees that he was prescribed methadone for drug-treatment purposes and that he would suffer from withdrawal if he did not continue receiving it. Prison employees responded that methadone was available at SCI Mercer and he should not worry. Plaintiff was then placed in the infirmary and was informed by a nurse that he would not receive methadone and instead would undergo detoxification. Plaintiff was then locked into a closet-sized room which only contained a bed and a small shower in the infirmary by himself for three days and underwent methadone withdrawal.

On the third day of being locked in the infirmary, P.O. Pernett visited him and handed him a document and instructed Plaintiff to sign it. Plaintiff signed the document. The document waived Plaintiff's right to challenge probable cause in detaining him at SCI Mercer. Plaintiff alleges that he was disoriented from the methadone withdrawal and did not sign the document voluntarily. Following this, three members of SCI Mercer's Program Review Committee ("PRC") met with Plaintiff: Deputy Superintendent Sauers, Deputy Superintendent Mahlmeister and Paul Theriault. The PRC determines inmates' housing arrangements at SCI Mercer. Plaintiff informed the PRC members that he was suffering from methadone withdrawal and that "he was in the wrong place," but his complaints were not responded to. Compl. at ¶ 51. The PRC members did not conduct any diagnostic test to determine his mental, physical or emotional health to determine his housing classification status. Plaintiff was not given an inmate number, an inmate handbook or an IQ test. After this meeting with the PRC members on January 2, 2014, Plaintiff was transported to SCI Mercer's "M Block" which is also referred to as "the hole."

After arriving at M Block, prison employees placed Plaintiff in an "extremely small outdoor cage-like room" and ordered him to strip naked despite being outside on an "extremely cold" winter day. *Id*. at ¶¶ 72-73. He was then strip searched and after approximately ten minutes of standing naked outside, he was permitted to put on a jumpsuit and shoes. Prison employees then informed Plaintiff was he would be under lockdown for twenty-three hours a day and would only have one hour per day to spend in a small, caged-in area in the prison yard. Plaintiff advised the prison employees that he needed medical attention and suffered from PTSD and methadone withdrawal. The prison employees responded by placing him in the "disciplinary section" of M Block for four days, where his cell only contained a camera and a bench in the middle of the cell. *Id*. at ¶¶ 82-83. Four days later, Plaintiff was moved to a different cell in the M Block containing a bed. During his incarceration in M Block, Plaintiff feared his cellmates would attack him and did not sleep. He did not want to take his daily hour of exercise because he "feared for his life being placed in a small cage-like room with ultra-violent offenders." *Id*. at ¶ 89.

During his incarceration, Plaintiff informed prison officials, including Lt. McFadden, that he suffered from PTSD. The prison officials acknowledged Plaintiff's PTSD but did not provide him with daily medication or consistent access to psychiatric counseling or medical care. Plaintiff claims that prison officials assured him that he would receive a temporary classification so that his medical needs could be addressed while also allowing him to live in general population and not M Block. After several months had passed, Lt. McFadden informed Plaintiff that he would not receive a temporary-inmate classification or a permanent inmate classification from SCI Camp Hill. Plaintiff asserts that the Pennsylvania Department of Corrections assigns a security classification to all of its prisoners using objective criteria at a diagnostic and

4

classification center such as SCI Camp Hill. Lt. McFadden instead informed Plaintiff that he was "stuck like chuck" in M Block indefinitely because he did not have a classification. *Id*. at ¶ 99.

On January 23, 2014, Plaintiff was scheduling to appear at a preliminary hearing for his underlying retail theft charges, but SCI Mercer did not transport Plaintiff to attend that hearing and failed to notify the court that Plaintiff was being detained at SCI Mercer. As a result, a warrant was issued for Plaintiff's arrest for his failure to appear. Plaintiff had an upcoming preliminary hearing for his underlying driving under the influence charge on February 3, 2014 and notified the court that he was a prisoner at SCI Mercer and had been there since December 30, 2013. The preliminary hearing for this charge was rescheduled and Plaintiff attended it. Plaintiff was ultimately found guilty of disorderly conduct and retail theft in his underlying charges related to his probation violation in July 2014 and he continued to be housed in the M Block for another month.

On August 11, 2014, Plaintiff was the target of a charade by at least two of the Defendants Counselor Whitman and Lt. McFadden. These Defendants unexpectedly appeared at Plaintiff's cell and transported him to a small room and cuffed him to the table. Several unknown corrections officer watched Plaintiff from behind a glass panel and shook their heads at Plaintiff. Defendants Whitman and McFadden told Plaintiff that his DNA tied him to a serious crime in New York and that he would be transported back to New York to face those charges. Plaintiff experienced extreme emotional distress and panic upon hearing this. However, this was a hoax; Whitman, McFadden and the unknown officers behind the glass began to laugh at Plaintiff. The officers then informed Plaintiff that he would be released because New York state

officials dropped all of the charges related to his probation violation. He was then released from SCI Mercer on August 12, 2014.

Plaintiff filed the instant action alleging a Fourteenth Amendment due process violation for placing him in M Block without classifying him at SCI Camp Hill prior to doing so, an Eighth Amendment violation[4] for subjecting him to cruel and unusual punishment for denying him methadone, subjecting him to an outdoor strip search on an extremely cold winter day, placing him in the M Block for nearly seven months despite his PTSD, not providing him with adequate medical and psychiatric care and playing the joke on him that he would be extradited to New York to face fake charges, and willful misconduct in violation of 42 Pa. Const. Stat. § 8550. Defendants move to dismiss certain counts in Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff withdrew his willful misconduct claim in his briefing in response to the Defendants motion and therefore this claim will not be addressed. Plaintiff also levies a "supervisor liability" claim against Defendants Superintendent Thompson, Deputy Superintendent Sauers, Deputy Superintendent Mahlmeister, Lt. McFadden and P.O. Pernett for his Fourteenth and Eighth Amendment claims.[5] Notably, Defendants concede that the allegations set forth in the complaint "support claims of deliberate indifference under the Eighth Amendment with regard to access to medical care and treatment and mental

---

[4] While Defendants move to dismiss Plaintiff's "[f]ailure to transport Plaintiff to [his] preliminary hearing" because the court finds no such enumerated cause of action against Defendants for this allegation in the complaint, no determination will be made on this point. *Pa. ex rel. Zimmerman v. PepsiCo,* 836 F.2d 173, 181 (3d Cir.1988) (it is improper to use an opposition to a motion to dismiss to amend a complaint).

[5] It must be noted that "supervisory liability" is not a cause of action, but rather a legal theory to hold supervisors personally responsible for acquiescing or participating in constitutional violations. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

health care and treatment." Br. in Supp. of Mot. to Dismiss [ECF No. 14] at 3 n.1. Therefore, such claims will go forward and will not be addressed in this decision.

## III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of the claims. *Connelly v. Lane Cont. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). When analyzing a motion to dismiss, it is appropriate to separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id*. at 210-11; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted). Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's "failure to classify" claim under the Fourteenth Amendment, his cruel and unusual punishment claim under the Eighth Amendment for plaintiff's (1) denial of access to methadone; (2) outdoor strip search; and (3) playing a joke on him, and Plaintiff's "supervisor liability" claim. Each claim will be addressed seriatim.

### a. 42 U.S.C. § 1983

To state a viable Section 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Twp of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); 42 U.S.C. §1983. To prevail "on a [Section] 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellacriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Therefore, "[t]he mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section 1983." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D.Pa. 2013).

### b. Fourteenth Amendment[6]

While Plaintiff does not set forth in his complaint whether he is alleging a violation of substantive or procedural due process, because the crux of his complaint alleges a failure to

---

[6] While Plaintiff also argues that he is a pretrial detainee, and thus has a "due process right to be free from confinement that amounts to punishment," Compl. at ¶ 131-133, this is a legal conclusion properly disregarded under *Twombly/Iqbal*. Likewise, he asserts no cause of action in his complaint implicating a finding of whether he is afforded more rights as a pretrial detainee rather than as a probation violator and has offered no legal analysis on the matter, thus no finding will be made on this point.

classify him in violation of Pennsylvania law, he is deemed to have asserted a procedural due process claim against the Defendants. Plaintiff alleges that while he was in custody at SCI Mercer, he "enjoyed a constitutionally protected due process right under the [Fourteenth] Amendment to be classified at SCI Camp Hill and to be housed at SCI Mercer based upon procedures prescribed by Pennsylvania state law along with every other Pennsylvania state inmate." Compl. at ¶ 127. Plaintiff argues that the Pennsylvania Code, 37 Pa. Code § 91.4 provides that male inmates "committed to the custody of the Department [of Corrections] will be received at male diagnostic and classification centers . . . unless granted other permission in advance by the Secretary or designee." 37 Pa. Code § 91.4. As Plaintiff argues, this regulation provides him a Fourteenth Amendment due process right to be classified at SCI Camp Hill such that his housing placement would be based on objective criteria and he was instead placed in M Block arbitrarily.

To state a claim under Section 1983 for a deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000)).

While states may under certain circumstances create liberty interests protected by the Due Process Clause, prison regulations are "not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Instead, prison regulations are created to "guide correctional officials in the administration of a prison." *Id*. at 482. Federal courts must avoid "the day-to-day management of prisons" and "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id*. "Such flexibility is especially

warranted in the fine-tuning of the ordinary incidents of prison life." *Id*. at 483. The Pennsylvania Code's requirement that male inmates in Department of Corrections custody be received at diagnostic and classification centers does not create a liberty interest under the Due Process Clause for Plaintiff to be objectively classified before receiving a prison-housing assignment. *See also Stephens v. Canino*, 71 F.Supp.3d 510, 516 (E.D.Pa. 2014) ("[t]he mere existence of state procedures or regulations does not create a protectable liberty interest."); *Rowe v. Kerestes*, No. 3:15-CV-2449, 2016 WL 75069, at *2 (M.D. Pa. Jan. 6, 2016) ("it is well-established that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment."); *Johnson v. Hill*, 910 F.Supp. 218, 220 (E.D.Pa. 1996) ("absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is a matter of prison administration."). Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process violation is dismissed with prejudice.

c. *Eighth Amendment[7]*

Plaintiff alleges that several separate instances he experienced while incarcerated in SCI Mercer each gives rise to an Eighth Amendment violation. Each instance will be addressed separately.

The Eighth Amendment prohibits cruel and unusual punishment and "restrains prison officials from certain actions (e.g., the use of excessive force against prisoners), and imposes on them a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Prison officials "must ensure that inmates receive adequate

---

[7] Likewise, Defendants do not move to dismiss Plaintiff's allegation that his placement in the M Block despite having PTSD constituted an Eighth Amendment violation and therefore that claim will not be addressed here.

food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Ibid.* Conduct that rises to the level of an Eighth Amendment violation must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835).

      i.      <u>Denial of Access to Methadone</u>

To be clear, Defendants to not move to dismiss any claim that they are alleged to have been deliberately indifferent to Plaintiff's medical or mental health care needs and such claims remain viable. Plaintiff alleges that a denial to provide him with methadone was cruel and unusual punishment in violation of the Eighth Amendment. However, it is clear that "there is no constitutional right to methadone, and a county is under no obligation to provide it. Pennsylvania law requiring that addicts receive 'medical detoxification,' . . . does not require the establishment of methadone maintenance facilities at corrective institutions." *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 (3d Cir. 1979) (citing *Norris v. Frame*, 585 F.2d 1183, 1188 (3d Cir. 1978)). Thus, Plaintiff's claim that Defendants failure to provide him with a methadone treatment does not constitute an Eighth Amendment violation and this claim is dismissed with prejudice.

      ii.      <u>Outdoor Strip Search</u>

Plaintiff alleges that the outdoor strip search that he was subjected to was humiliating and invasive. A visual-body cavity search, like the one Plaintiff was subjected to, does "not constitute cruel and unusual punishment unless [it is] 'undertaken maliciously or for the purpose of sexually abusing an inmate.'" *Parkell v. Danberg*, 833 F.3d 313, 336 (3d Cir. 2016) (citation omitted). There is no allegation that the Defendants performed the strip search for a malicious or

sexually abusive purpose, and he has failed to state a plausible Eighth Amendment claim in this regard.

The fact that Defendant performed the strip search outside on an "extremely cold" winter day also does not rise to the level of a "conditions of confinement" constitutional violation. Only "extreme deprivations" make out such a claim and the alleged deprivations must deny "the minimal civilized measure of life's necessities" to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Another court when faced with a similar issue found that requiring inmates to wait outside for five minutes for a strip search in cold temperatures was a mere discomfort or inconvenience rather than a deprivation of "the minimal civilized measures of life's necessities." *Hughes v. Bryant*, 2010 WL 148194, at *5 (E.D.Tex. Jan 11, 2010). *But see Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991) (finding that leaving prisoners exposed to temperatures below freezing for four days without affording them any additional protection constituted deliberate indifference). Likewise, courts have dismissed outdoor strip search claims where the prisoner has not alleged that he suffered any objectively serious injury as a result of the search. *See Malo v. Hernandez*, No. EDCV 13-1781-SJO JPR, 2014 WL 7246730, at *4 (C.D. Cal. Dec. 18, 2014), aff'd, No. 15-55035, 2016 WL 5115397 (9th Cir. Sept. 21, 2016) (dismissing Eighth Amendment claim for failure to show any objectively serious injury as a result of an outdoor strip search); *Tyler v. Watson*, No. CIV.A. 7:09-CV-00174, 2009 WL 4110304, at *3 (W.D. Va. Nov. 25, 2009) (granting summary in favor of prison officials for prisoner's Eighth Amendment claim involving a five minute long outdoor strip search in thirty-degree temperatures because there was no evidence he "suffered any objectively serious injury"). While Plaintiff endured discomfort being exposed to cold, the short

length of this strip search, ten minutes, the fact that this only occurred once and that he did not suffer any objectively serious injury is not enough to conclude that it was a deprivation of the minimal civilized measures of life's necessities in violation of the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claim for prison officials conducting an outdoor strip search is dismissed with prejudice.

### iii. Joke and/or Trickery

Plaintiff alleges that the joke played on him by Defendants Counselor Whitman and Lt. McFadden and unidentified corrections officers constitutes cruel and unusual punishment in violation of the Eighth Amendment. However, the Eighth Amendment is not a code of good etiquette and does not protect against acts of verbal harassment or unpalatable jokes. *Rodriguez v. Baeli*, No. CIV.A. 10-4242 RBK, 2011 WL 42998, at *2 (D.N.J. Jan. 5, 2011) (collecting cases).[8] While the officers' conduct in lying to Plaintiff and telling him that his DNA tied him to a serious crime in New York and that he would be extradited there to face the charges is certainly unprofessional, callous and wholly inappropriate for corrections officers acting under color of state law, it does not rise to the level of cruel and unusual punishment under the Eighth Amendment. Therefore, Plaintiff's claim in this regard will be dismissed with prejudice.

### d. Supervisory Liability

Plaintiff alleges that Defendants Superintendent Thompson, Deputy Superintendent Sauers, Deputy Superintendent Mahlmeister, Lt. McFadden and P.O. Pernett knew or reasonable should have known of and/or participated in, and/or condoned, and/or ratified: (1) a policy or practice of refusing to provide inmates such as Plaintiff medically appropriate drug rehabilitation

---

[8] Defendants admit that such conduct is "ill-advised, unprofessional and unbecoming." Br. in Supp. of Mot. to Dismiss [ECF No. 14] at 10.

and access to methadone while forcing inmates such as Plaintiff to go through withdrawal; (2) a policy or practice or denying inmates . . . regular and consistent access to psychiatric medical care to treat PTSD; (3) the placement of Plaintiff in solitary confinement for approximately seven months, despite his diagnosis with PTSD. Compl. [ECF No. 1] at ¶¶ 148b-d.[9]

Plaintiff does not specify how each alleged "supervisor" violated Plaintiff's constitutional rights either by personally participating in these alleged violations, or by establishing and maintaining a policy, practice or custom that caused Plaintiff's constitutional harm. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The Court agrees with Defendants that Plaintiff "failed to delineate the specific actions of each defendant in connection with each asserted constitutional violation" in his complaint. Br. in Supp. of Mot. to Dismiss [ECF No. 14] at 13. Therefore, Plaintiff's claim for supervisory liability is dismissed without prejudice and in accordance with this decision, Plaintiff may amend his complaint to include specific actions of each defendant in connection with each remaining constitutional violation, and indicate whether he intends to bring these claims against these Defendants in their official or individual capacities.

## V. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Plaintiff's complaint is GRANTED. The following claims are dismissed with prejudice: (1) the Fourteenth Amendment procedural due process claim; (2) the Eighth Amendment claim for denial of access to methadone; (3) the Eighth Amendment claim for the outdoor strip search; and (4) the Eighth

---

[9] While the complaint also alleges that these Defendants failed to implement or follow a policy or practice of failing to provide inmates such as Plaintiff with objective diagnostic and classification procedures, the Court need not discuss this matter, as it has been previously found to not be a constitutional violation.

14

Amendment claim for the joke and/or trickery. Plaintiff's supervisory liability claim is dismissed without prejudice. An appropriate Order follows.

Dated: November 28, 2016

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF