IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ROBERT A. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-01712-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| WHITMAN, PRISON COUNSELOR; DEBRA K. SAUERS, MICHAEL J. MAHLMEISTER, ERIC PRENATT, LT. MCFADDEN, JOHN E. WETZEL, SHAWNESE THOMPSON, ADMINISTRATOR OF THE ESTATE OF BRIAN H. THOMPSON; | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Robert A. Love initiated this civil rights action alleging that his civil rights were violated when he was held in prolonged solitary confinement as an out-of-state parole or probation violator in Pennsylvania State Correction Institution at Mercer's ("SCI Mercer") Restricted Housing Unit ("RHU") for between six to eight months. Presently for disposition is the following:

> (1) A motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendants Secretary of Corrections John A. Wetzel ("Secretary Wetzel"), former Superintendent Brian Thompson ("Superintendent Thompson"),[2] Deputy Superintendent Debra K. Sauers ("Deputy Superintendent Sauers"), Deputy Superintendent Michael J. Mahlmeister ("Deputy Superintendent

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

[2] Superintendent Thompson is now deceased and his estate has been substituted as the properly named party. However, for ease of reference, the court will continue to refer to Superintendent Thompson as a defendant in this decision.

1

Mahlmeister"), Lieutenant Steven McFadden ("Lt. McFadden"), Corrections Counselor Edward Whitman ("Counselor Whitman"), and Pennsylvania Board of Probation and Parole Institutional Parole Agent Eric Prenatt ("Parole Agent Prenatt") (collectively the "Corrections Defendants") (ECF No. 80).

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Corrections Defendants' motion for summary judgment is granted in part and denied in part without prejudice consistent with the following order.

## II. BACKGROUND

Plaintiff was formerly a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") confined at SCI Mercer. He brings the present action challenging the constitutionality of being placed in solitary confinement as an out-of-state parole or probation violator and generally brings 42 U.S.C. § 1983 cruel and unusual punishment and due process claims pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

**Plaintiff's Initial Criminal Charges, Secondary Arrest and Parole/Probation Violation**

On July 31, 2012, Plaintiff was arrested in Jefferson County, New York for criminal trespass, grand larceny and possession of heroin. As a result of the arrest, Plaintiff was sentenced to six months of incarceration in New York and five years of probation. After serving four months of incarceration in New York, Plaintiff was released on parole on February 21, 2013.[3] Thereafter, Plaintiff transferred his parole from New York to Pennsylvania under supervision of the Pennsylvania Board of Probation and Parole ("PBPP").

In December 2013, Plaintiff was charged with several different criminal charges in

---

[3] In contrast to Plaintiff's assertion that he was paroled on November 30, 2012, the Warrant to Commit and Detain states that Plaintiff was paroled on February 21, 2013. Plaintiff offers no evidence to the contrary, and therefore, for purposes of this motion, the court will presume that Plaintiff was paroled on February 21, 2013. Plaintiff shall clarify this point in his supplemental briefing.

2

Pennsylvania. Upon learning of these new charges, PBPP issued a warrant to commit and detain Plaintiff for violating his parole/probation at the direction of the New York state authorities.

After being arrested pursuant to the PBPP's detainer warrant, Plaintiff was transported to SCI Mercer at approximately 1200 hours on December 30, 2013. While Plaintiff maintains that he was a probation violator, Corrections Defendants maintain that Plaintiff was considered a parole violator. Regardless, it is apparent from the record that DOC treated Plaintiff as a parole violator during his confinement at SCI Mercer.[4]

### DOC Officials

Secretary Wetzel is the head of the DOC and has the authority to create policy.

Superintendent Thompson was the top official at SCI Mercer during the time that Plaintiff was incarcerated in the RHU. Plaintiff claims that Superintendent Thompson implemented and enforced the policies of the DOC at SCI Mercer.

Deputy Superintendents Sauers and Mahlmeister were Deputy Superintendents at SCI Mercer during the time that Plaintiff was incarcerated there and were members of the Program Review Committee ("PRC") in charge of reviewing inmate confinement in the RHU including that of Plaintiff.

Lt. McFadden was the supervisor of the RHU when Plaintiff was incarcerated at SCI Mercer and Plaintiff claims that he implemented and/or enforced RHU policies.

Counselor Whitman was a corrections counselor at SCI Mercer during the time that Plaintiff was incarcerated there. Counselor Whitman was assigned as the intake counselor on the intake housing unit. In that role, he assisted inmates including "out of state parole returns" such

---

[4] The parties shall so clarify Plaintiff's status as a probation or parole violator along with the legal effect, if any, of such a status vis a vis his allegedly violated constitutional rights.

3

as Plaintiff. Whitman also served as part of Plaintiff's unit team and participated in Plaintiff's thirty-day reviews for "Administrative Custody" status.

Parole Agent Prenatt was employed by PBPP as an institutional parole agent assigned to SCI Mercer. In this role, Parole Agent Prenatt assisted field agents supervise parolees who were recommitted to a state correctional facility. This included presenting and reviewing paperwork with incarcerated parolees.

## Administrative Custody Procedures – DC-ADM 802

Administrative Custody ("AC") "is a status of confinement" for inmates that DOC uses "for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population." DC-ADM 802 §3.A.1 (ECF No. 83-1 at 14). An inmate confined in AC status "shall not have the privileges available in general population security level housing." *Id*. For example, an inmate confined to AC status is not permitted radio, television or telephone calls except emergency or legal telephone calls, is permitted only limited personal property, may not have any contact visits, are confined to their cells for 24 hours a day, seven days a week with the exception of being permitted to exercise one hour per day, five days per week, and are given the opportunity to shower three times per week. DC-ADM 802 § 3.A.2-8. Inmates with AC status are housed in the RHU which is more commonly known as solitary confinement. DC-ADM 802 § 3.A.2. The RHU houses inmates confined to AC status and inmates being housed in solitary confinement for disciplinary reasons.

DOC has established and implemented a policy and procedures manual with respect to AC procedures, referred to as the DC-ADM. DC-ADM 802 *effective* November 19, 2013 (ECF No. 83-1, p.1-19). An inmate can be confined to AC status for myriad reasons. For example, inmates can be confined to AC status if their presence in general population constitutes a "threat to life,

property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility[,]" or if there are "no records and/or essential information" available to "determine the inmate's custody level or housing needs." DC-ADM 802 § 1.A.1.a-k. Pertinent here, where an inmate is "being held temporarily for another authority and is not classified for the general population of the holding facility" the inmate may be confined to AC status. DC-ADM 802 § 1.A.1.h. However, if the inmate is a "Parole Violator," or a temporary transfer from another facility, the inmate is "eligible for release to general population[.]" *Id.*

DC-ADM 802 also establishes requirements for administrative review of an inmate's AC status. An inmate should receive an initial hearing by the PRC which explains the reasons for the inmate's placement in AC status. DC-ADM 802 § 2.A.2, 5. There is also an appeal process for the inmate to challenge the PRC's decision. *Id*. at § 2.C. An inmate's AC status must be reviewed by the PRC "every seven days for the first two months." *Id*. at § 2.D.1. Likewise, "[e]ach inmate in AC status shall be seen weekly by his/her counselor." *Id*. at § 2.D.2. The inmate's unit management team must review the inmate's AC status "after 30 days and every 30 days thereafter." *Id*. at § 2.D.3. These periodic reviews are also subject to the appeal process established in DC-ADM 802 § 2.C. In addition to periodic reviews by prison officials, when an inmate's confinement to AC exceeds thirty days, "[a] qualified psychologist or psychiatrist shall personally interview and conduct an assessment" of the inmate. *Id*. at § 2.D.7. If the inmate's AC status is prolonged, "a mental health assessment [shall] be completed at least every 90 calendar days." *Id*.

**Plaintiff's Post-Traumatic Stress Disorder ("PTSD") and opiate dependence**

Prior to being incarcerated at SCI-Mercer, Plaintiff alleges that he was diagnosed with PTSD caused by his military service in the Iraq war. Plaintiff entered the United States Army in 2006 and was discharged in 2011. Additionally, prior to his incarceration at SCI-Mercer, he was

5

enrolled at a methadone clinic for treatment for opiate dependence. During his intake at SCI-Mercer, Plaintiff reported to prison officials that he was diagnosed with PTSD and anxiety and communicated to prison officials that his current medications were 70mg of methadone and 10mg of Valium and indicated that his past withdrawal symptoms were extreme. Additionally, Plaintiff told Lt. McFadden at some point during his incarceration that he suffered from PTSD.

### Plaintiff's confinement at SCI-Mercer

Upon being initially received at SCI-Mercer on December 30, 2013, Plaintiff was physically observed and evaluated. The evaluation noted several minor injuries and recorded that Plaintiff was concerned about withdrawal because he was taking methadone. The receiving officer recommended that Plaintiff be placed in Administrative Custody following his medical clearance. That same day, Plaintiff had a medical screening by a nurse. The nurse's report recorded Plaintiff's minor injuries, his concerns about his withdrawal and indicated that routine psychiatric and medical referrals were needed. Thereafter on that same day, Plaintiff was examined in the infirmary at SCI-Mercer and began detoxification treatment under supervision of the medical staff. Plaintiff was prescribed a Klonopin taper to assist with the detoxification. Plaintiff claims that SCI Mercer has the ability to prescribe methadone to inmates that are in need, such as those with prescriptions for pain management, however, the attending physician told Plaintiff that he could not be placed on methadone. Defendants respond that DOC policy only allows for methadone use for pregnant women addicted to opioids and for pain management, and because Plaintiff was seeking methadone to prevent withdrawal, Plaintiff's stated need did not fall within a permitted use for methadone.

Later that day, a report was issued by prison officials which indicated that Plaintiff had never been confined in DOC and there were no records relating to Plaintiff's background to

6

determine his custody level or housing needs. The report indicated that Plaintiff would be housed in the infirmary isolation cell until medically cleared for RHU placement. The report also indicated that Plaintiff's RHU placement would be pending PRC review. According to Defendant Whitman, because Plaintiff was an out-of-state parole violator with a detainer from New York, it was up to the governing bodies in New York to determine to charge and sentence him on the new charges and place Plaintiff back on parole supervision or to extradite him back to New York to serve more time there.

The next day, on December 31, 2013, while continuing his detoxification treatment, Plaintiff received a physical examination by the medical staff and he was found to be "medically stable." Defs. SMF Exhibit 28. ¶ 40. Plaintiff denies being medically stable and argues that his detoxification treatment was not effective.

On January 2, 2014, Parole Agent Prenatt met with Plaintiff in the infirmary to provide him with a PBPP form which notified him of recent criminal charges and technical violations that could be used at a parole violation revocation hearing. After advising Plaintiff of the charges and of his rights, Plaintiff waived his right to a probable cause hearing by signing both the Notice and Waiver forms. In the form, Plaintiff wrote that he admitted "to having THC in [his] urine at the time of testing" and explained that the opiates in his system "was from the medication given to [him] when [he] was being held at Mercer County Jail . . . for Methadone detox for [his] treatment for opiate dependency." Defs. SMF Ex. 11; ¶ 44. During this meeting, Plaintiff did not complain to Parole Agent Prenatt about any medical issues or mental health issues and according to Parole Agent Prenatt, Plaintiff did not appear to be in any mental or physical distress, appeared to understand what Parole Agent Prenatt was telling him and responded appropriately to Parole Agent Prenatt's questions.

7

The next day, January 3, 2014 the Program Review Committee ("PRC") met with Plaintiff while he was in the infirmary. The PRC is charged with the authority to determine where an inmate will be housed within SCI Mercer. An inmate's opportunity to make a request to the PRC or voice a grievance is when the inmate is seen by the PRC. When an inmate voices a concern or grievance, the PRC is obligated to look into it and the PRC must follow up on an inmate's request to leave the RHU. Plaintiff contends that the PRC members stood in the doorway of the infirmary and never entered the room nor spoke with Plaintiff. Deputy Superintendents Sauers and Mahlmeister both served on the PRC at SCI-Mercer. The PRC at that time told Plaintiff that he would be moved to the RHU upon medical release pending transfer to New York authorities and provided him with a copy of the decision. While DC-ADM 802 provides that any inmate whose presence in general population would constitute a threat to that inmate, other inmates or staff must be placed on AC status, Plaintiff denies that his presence constituted any of those threats and that he should have been released to general population. To this point, Lt. McFadden testified that he tried to get Plaintiff "out of there [*i.e.*, RHU] because [he] thought [Plaintiff] would be all right if they shipped him to A block, but that wasn't [his] decision." McFadden Dep. (ECF No. 89-3 at 8) 28:3-7.

That same day, Plaintiff was evaluated by medical staff and cleared for placement in the RHU and continued on the Klonopin taper until January 8, 2014. Thereafter, Plaintiff was escorted to the intake section of the RHU and processed. It was noted that Plaintiff was "[i]nvolved with [p]sychology and psychiatric services. Is taking medication as prescribed. Denies any harm to self of others. No self-injurious behaviors reported." Defs.' SMF Ex. 9. Plaintiff was placed in an observation cell because he was still being tapered off of medications with significant side effects and Lt. McFadden testified that Plaintiff did not indicate to him that he had any mental health concerns at that point. That same day, Plaintiff was evaluated by psychology staff who reported

8

no safety or security concerns. Plaintiff remained in the observation cell until January 5, 2014 and was transferred to a cell in the AC side of the RHU. Plaintiff alleges that while he was medically cleared to leave the infirmary, he did not undergo intense withdrawal symptoms until after he was removed from the infirmary and placed in AC in the RHU.

On January 9, 2014, the PRC met to review his status, however it is disputed whether the PRC met with Plaintiff. The PRC report indicated that Plaintiff "was placed in the custody of the DOC on 12/30/2013 as an out of state parole violator. He is a custody level 3P inmate and has been medically cleared." Defs.' Statement of Facts ("SMF") Exhibit 19b (ECF No. 82). The report further stated that the PRC "conducted a seven[-]day review of [Plaintiff] and he will remain in AC status pending transfer to New York authorities." *Id*. Based upon his status as an out of state parole violator, he was held in the RHU the entire time he was confined at SCI-Mercer.

The PRC conducted weekly reviews for the first two months of Plaintiff's confinement, with reviews conducted on January 16, 23, 30, February 6, 13, and 20, 2014. Plaintiff disputes that the PRC met with him on these occasions. The PRC also conducted two 90-day AC reviews of Plaintiff's RHU placement. Plaintiff disputes that the PRC met with him on these occasions. The PRC reports reflect that Plaintiff was present for the review and he advised the PRC "that his dietary, exercise and medical needs are being met" and that "[h]e has no concerns to note." Defs.' SMF Ex. 21a (ECF No. 82). The PRC's March 27, 2014 90-day AC Review indicated that Plaintiff was informed that "he will remain in AC status pending the outcome of charges in New York." *Id*. During Plaintiff's confinement, the unit team conducted several 30-day reviews as mandated by DC-ADM 802 which took place on January 27, 2014, February 25, 2014, March 27, 2014, April 23, 2014, May 23, 2014, June 24, 2013 and July 23, 2014. Plaintiff denies that these procedures provided him with any meaningful review of his placement in AC status and that the PRC simply

9

"copy and pasted" its initial review in later reviews.

When initially placed in the RHU, Plaintiff was assigned a single cell, however, Plaintiff was eventually placed with a cellmate and over the course of his confinement, had several different cell mates. In March 2014, Plaintiff was given a job as a "porter" or "pod worker," doing janitorial duties in the RHU. Plaintiff testified that this would get him out of his cell for an hour or an hour and a half per day, although DOC records reflect that he was compensated for five hours per day.

During the totality of his confinement at SCI Mercer, Plaintiff cumulatively spent 148 days in the RHU, with the longest stint being 82 days from December 30, 2013 to March 21, 2014.

During Plaintiff's initial intake at SCI Mercer, at least two mental health referrals were initiated for Plaintiff. On January 3, 2014, Plaintiff had an initial psychiatric evaluation in which Plaintiff was diagnosed and given a treatment plan which included a prescription for Zoloft and a Klonopin taper for his detoxification treatment. Additionally, Plaintiff's treatment plan included psychological therapy as requested.

Plaintiff's Pennsylvania criminal charges were resolved in June 10, 2014. Thereafter, Plaintiff was returned to the RHU and confined there until August 12, 2014 when the New York authorities determined it would not return Plaintiff to New York.

### III. STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law, a fact not in

11

dispute *sub judice*, and that the plaintiff was deprived of a federal constitutional right.

## IV. DISCUSSION

As a preliminary matter, in his response to Defendants' motion for summary judgment, Plaintiff withdraws certain claims and defendants.

Specifically, Plaintiff withdraws his 42 U.S.C. § 1983 claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment as it pertains to any denial of mental health care during his incarceration found at Count II of his complaint. Therefore, judgment is entered against Plaintiff and for Corrections Defendants on Count II of Plaintiff's complaint.

Next, Plaintiff states that he "withdraws his claims for injunctive and declaratory relief because there is no dispute that he is no longer confined at SCI Mercer. Plaintiff also withdraws his claims against Defendant Wetzel as he was sued in his official capacity." Pl.'s Br. (ECF No. 87) at 28. Therefore, Corrections Defendants are entitled to summary judgment to Plaintiff's claims for injunctive and declaratory relief. As to Plaintiff's withdrawal as to Secretary Wetzel, it is not clear whether he intends to withdraw all claims asserted against Secretary Wetzel (*i.e.*, Count III related to cruel and unusual punishment and Count IV related to procedural due process). Accordingly, Plaintiff is ordered to so state in his supplemental response brief.

Lastly, Plaintiff withdraws all claims against Parole Agent Prenatt. Therefore, judgment is entered against Plaintiff and in favor of Parole Agent Prenatt on all remaining claims.

After Plaintiff's concessions, three claims remaining against the following Defendants:

(1) A 42 U.S.C. § 1983 claim for violating Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment by having a policy or practice of placing inmates such as Plaintiff in solitary confinement despite knowing or should have knowing that Plaintiff suffered with a psychological illness such as PTSD (Count I);

(2) A 42 U.S.C. § 1983 claim for violating Plaintiff's substantive due process rights under the Eighth and Fourteenth Amendments by having a policy or practice of

> automatically and indefinitely placing all out-of-state parole violators in solitary confinement; (Count III) and

> (3) A 42 U.S.C. § 1983 claim for violating Plaintiff's procedural due process rights under the Fourteenth Amendment for indefinitely placing Plaintiff in solitary confinement and providing no possibility of removal from complete isolation (Count IV).

Turning to Defendants' motion for summary judgment, each argument that is supported by record evidence will be addressed in turn.

    a.  <u>Statute of Limitations</u>

First, the Corrections Defendants argue that they are entitled to summary judgment for Plaintiff's claims under the Eighth and Fourteenth Amendments under the theory that Plaintiff was subjected to "prolonged solitary confinement" while at SCI Mercer because these claims are barred by the applicable statute of limitations. Corrections Defendants argue that Plaintiff's Second Amended Complaint added these claims for the first time on October 16, 2018, and these claims accrued before October 16, 2016 because Plaintiff was released from SCI Mercer on August 12, 2014 and his claims accrued at the very latest upon his release. Plaintiff responds that these claims relate back to the filing of the initial complaint because they arise out of the same conduct set forth in the initial complaint and therefore summary judgment is not proper.

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Referred to as the "relation-back" doctrine, Rule 15(c) "is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.' " *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir.

2012) (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010) ). Essentially, Rule 15(c) "allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality." *Glover*, 698 F.3d at 145 (citations omitted).

In determining whether a later pleading relates to an earlier pleading, there must be a "common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.2004). It is also "well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover*, 698 F.3d at 145 (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n. 3 (1984); *Bensel*, 387 F.3d at 310). Therefore, relation back will only be allowed "where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds[.]'" *Glover*, 698 F.3d at 145 (quoting *Bensel*, 387 F.3d at 310). Where an amendment significantly alters "the nature of a proceeding by injecting new and unanticipated claims[,]" the court must be cautious in finding that the amendment relates back. Where the amendment "restate[s] the original claim with greater particularity or amplify[ies] the factual circumstances surrounding the pertinent conduct[,]" the court may approve relation back. *Bensel*, 387 F.3d at 310.

In the instant case, Plaintiff's claims under the Eighth and Fourteenth Amendments under the theory that Plaintiff was subjected to "prolonged solitary confinement" while at SCI Mercer relate back to his original pleading and are not barred by the applicable statute of limitations. As to Plaintiff's claim that he was subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments due to his indefinite solitary confinement, which is referred to as

"Count III" in the amendment, these facts and legal theories were set forth in the original complaint. *See* Compl. (ECF No. 1) at ¶¶ 79-91 (setting forth facts alleging that Plaintiff suffered from PTSD and was placed in solitary confinement for the majority of his incarceration; ¶¶ 97-100 (setting forth facts alleging that Lt. McFadden told Plaintiff he would remain in the RHU and would not receive an inmate classifications); ¶ 144c (setting forth "Count II" as "Cruel and Unusual Punishment" under the Eighth Amendment and basing the claim upon Plaintiff being placed "in 'the hole' for approximately seven months and witness[ing] Plaintiff's psychiatric deterioration from PTSD as he was subjected to extreme isolation."). Plaintiff's amendment simply restates his original claim with greater particularity and elaborates the factual circumstances set forth in the original complaint. Additionally, Defendants were on notice that he was bringing a civil rights lawsuit claiming cruel and unusual punishment for his placement in the RHU. The fact that Plaintiff did not state in his original complaint that his placement in the RHU was due to his status as a parole or probation violator does not prevent relation-back, because those were facts learned through the discovery process and are simply part of the amendment's attempt to restate the claim with greater factual particularity.

The same reasoning applies to Plaintiff's claims related to the violation of his procedural and substantive due process rights, referred to as Count IV in the amendment. In his amendment, he claims that his due process rights were violated by SCI Mercer's policy or practice of automatically and indefinitely placing all out-of-state parole violators in solitary confinement. In the original complaint, while Plaintiff did not set forth the specific legal theory of a due process violation, he advanced it under a "failure to classify" theory. Under this theory, he claimed that it was a violation of his due process rights for SCI Mercer's failure to classify him prior to entering the prison system, because he believed based on the facts available this was SCI Mercer's reason

15

for placing him in the RHU. Compl. (ECF No. 1) at ¶¶ 56-70. However, after discovery, it was revealed that it was Plaintiff's status as a parole or probation violator that determined his housing status. Plaintiff has amended his complaint to accurately reflect the record. Moreover, Corrections Defendants were on notice of the claims, as the original complaint included allegations that the PRC did not conduct any test to determine where Plaintiff should be housed, *id.* at ¶¶ 52-66, that Lt. McFadden told Plaintiff would be placed in the RHU indefinitely, *id.* at ¶ 99, and attempted to set forth a due process claim for failing to justify placing Plaintiff in the RHU indefinitely, *id.* at ¶¶ 127, 134.

Therefore, because the claims set forth in the amendment relate back to the original pleading, Corrections Defendants' motion for summary judgment to this end is denied.

b. Compensatory Damages

Corrections Defendants next argue that because the record fails to disclose that Plaintiff sustained any physical injury as a result of the alleged conduct, they are entitled to summary judgment on all of Plaintiff's claims to recover compensatory damages.

The Prison Litigation Reform Act ("PLRA") expressly provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). In *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003), the Court of Appeals for the Third Circuit interpreted this provision as predicating "a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury." *Mitchell*, 318 F.3d at 533. *See Hubert v. Wetzel*, CV 18-354, 2018 WL 4828470, at *6 (W.D. Pa. Oct. 4, 2018) (barring compensatory damages under the PLRA where corrections defendants' actions exacerbated the inmate's mental illness). Corrections Defendants argument is based solely

16

on their assertion that Plaintiff has not suffered any physical injury. However, as pointed out by Plaintiff, he has alleged he has suffered sleep deprivation, headaches and exacerbating PTSD symptoms, although he does not state how his PTSD manifests. *See Mitchell*, 318 F.3d at 534 (sleep loss alone is not a physical injury). Because neither party fully addresses the legal effect of Plaintiff's physical injuries or whether they were *de minimis*, the court will require supplemental briefing at to this issue. Accordingly, Corrections Defendants' motion will be denied without prejudice to this point.[5]

### i. Is Plaintiff a Pretrial Detainee?[6]

A threshold issue that neither party addressed is whether plaintiff's status as a parole violator makes him a pretrial detainee.[7] If Plaintiff is a pretrial detainee, he is afforded greater constitutional protections than an individual convicted of a crime and serving a sentence which directly influences this court's analysis on Plaintiff's remaining claims. *See e.g., U.S. v. Dobson*,

---

[5] Regardless of whether Plaintiff is permitted to seek compensatory damages, Plaintiff is still entitled to punitive damages provided that Plaintiff's claims survive summary judgment and a jury finds that the Corrections Defendants conduct was "motivated by evil motive or intent, or [] involve[d] reckless or callous indifference" to Plaintiff's constitutional rights. *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir.1996).

[6] To be clear, it is not Corrections Defendants' responsibility to make any assertion that Plaintiff was a pretrial detainee. Rather, it was Plaintiff's counsel's responsibility to make this critical distinction and argue in the first instance that Plaintiff was afforded greater constitutional protections because of his status as a parole violator. That the court is allowing supplemental briefing should in no way be construed as a finding on the merits of Plaintiff's claims. Rather, this case must be decided with the appropriate legal framework in the first instance with a clear record. If Plaintiff is not asserting that he is a pretrial detainee, he shall so make clear in his supplemental briefing.

[7] Recently, the Court of Appeals for the Third Circuit in an unpublished opinion treated a parole violator as a pretrial detainee and afforded him constitutional protections under the pretrial detainee standard for his claims that his placement in solitary confinement violated his constitutional rights and not under the standard afforded to convicted individuals. *Singleton v. Superintendent Camp Hill SCI*, 747 Fed. Appx. 89, 92 (3d Cir. 2018) (unpublished).

585 F.2d 55, 59 (3d Cir. 1978) (until parole is revoked, "a parole violator is no different than a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment.").[8]

Plaintiff was being held as a pretrial detainee as to his new charges in Pennsylvania; however, it is unclear whether Plaintiff starting serving any sentence for a parole violation or for his Pennsylvania charges. This distinction is crucial, as Plaintiff's Eighth Amendment non-medical conditions of confinement claim would necessarily fall under the due process clause of the Fourteenth Amendment which applies a different standard that the parties have not briefed. *Hubbard v. Taylor*, 399 F.3d 150, 163–67 (3d Cir. 2005) (finding that the Eighth Amendment applies only after sentence and conviction). It is unclear from the record when or if Plaintiff's status as a parole violator ever changed and the legal effect of Plaintiff waiving his right to a probable cause hearing had on his status. The court is not required to scour the record without specific guidance from the parties to construct specific facts or legal arguments that support or defend against claims. *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006). Without more, the court cannot make a meaningful decision on the remaining issues raised in the motion for summary judgment and the motion is denied without prejudice. The court will order supplemental briefing consistent with this decision.

Further, the court notes that Corrections Defendants did not initially raise the issue of qualified immunity in its supporting brief and waited until the reply brief to raise this threshold

---

[8] In the court's estimation, the confusion of issues can be partially contributed to Plaintiff's failure to address these issues in the response to the motion for summary judgment and instead spending most of the briefing attempting to convince the court of the deleterious effects of solitary confinement on persons with PTSD. The court does not doubt this fact, however, the court cautions Plaintiff to focus on the facts of this particular case and the law binding on this court in the supplemental briefing.

issue. In the interests of justice, Corrections Defendants may assert its qualified immunity defense in the supplemental brief and the court will not deem the issue waived. *See e.g., Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018).

## V.     CONCLUSION

Based on the foregoing, Corrections Defendants' motion for summary judgment is granted in part and denied in part without prejudice. The motion is granted as to Plaintiff's claims at Count II, all claims for declaratory and injunctive relief, and all claims asserted against Defendant Prenatt. The remainder of Corrections Defendants' motion is denied without prejudice consistent with the following Order.


Dated: September 23, 2019.                    By the Court,
                                              s/ Cynthia Reed Eddy
                                              Cynthia Reed Eddy
                                              Chief United States Magistrate Judge