IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ROBERT A. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-01712-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| WHITMAN, PRISON COUNSELOR; | ) | |
| DEBRA K. SAUERS, MICHAEL J. | ) | |
| MAHLMEISTER, LT.  MCFADDEN, JOHN | ) | |
| E. WETZEL, SHAWNESE THOMPSON, | ) | |
| ADMINISTRATOR OF THE ESTATE OF | ) | |
| BRIAN H. THOMPSON; | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM OPINION[1]**

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

## I.   INTRODUCTION

Plaintiff Robert A. Love initiated this civil rights action alleging that his constitutional rights were violated when he was held in a restrictive housing unit ("RHU") as an out-of-state parole violator in Pennsylvania State Correction Institution at Mercer ("SCI Mercer") for approximately 148 days against numerous prison officials (collectively "Corrections Defendants").  The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

Presently pending before the court is Corrections Defendants' renewed motion for

---

[1]      All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

summary judgment. The court ruled on many issues on Corrections Defendants' prior summary judgment motion but ordered supplemental briefing on numerous issues, including qualified immunity, supervisory liability and compensatory damages. Presently for disposition are those outstanding issues not resolved during the first round of briefing.

For the reasons that follow, the Corrections Defendants' renewed motion for summary judgment is granted in part and denied in part. Corrections Defendants' motion is granted as it relates to Plaintiff's Fourteenth Amendment substantive due process claim, Plaintiff's supervisory liability claim against Secretary of the Department of Corrections John E. Wetzel ("Secretary Wetzel"), and Plaintiff's claim for compensatory damages and denied as it relates to Plaintiff's Fourteenth Amendment procedural due process claim.

## II.     BACKGROUND

Plaintiff was formerly a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") confined at SCI Mercer. He brings the present action challenging the constitutionality of being placed in the RHU as an out-of-state parole or probation violator and the following claims against Corrections Defendants remain: (1) a Fourteenth Amendment cruel and unusual punishment claims pursuant to 42 U.S.C. § 1983; and (2) a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983.

**Plaintiff's Initial Criminal Charges, Secondary Arrest and Parole/Probation Violation**

In July 2012, Plaintiff was arrested in the state of New York for several crimes. As a result of the arrest, Plaintiff was sentenced to six months of incarceration in New York and five years of probation. After serving four months of incarceration in New York, Plaintiff was released on parole on February 2013. Thereafter, Plaintiff transferred his parole from New York to Pennsylvania. In December 2013, while on parole for his New York state crimes, Plaintiff was

charged with several new criminal charges in Pennsylvania.  Upon learning of these new charges, a warrant was issued to commit and detain Plaintiff for violating his parole/probation at the direction of the New York state authorities.  After being arrested pursuant to the detainer warrant, Plaintiff was transported to SCI Mercer on December 30, 2013.

### Administrative Custody Procedures – DC-ADM 802

Administrative custody ("AC") "is a status of confinement" for inmates that the DOC uses "for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population." DC-ADM 802 §3.A.1 (ECF No. 83-1 at 14).  An inmate confined in AC status "shall not have the privileges available in general population security level housing." *Id*.  For example, an inmate confined to AC status is not permitted radio, television or telephone calls except emergency or legal telephone calls, is permitted only limited personal property, may not have any contact visits, are confined to their cells for 24 hours a day, seven days a week with the exception of being permitted to exercise one hour per day, five days per week, and are given the opportunity to shower three times per week. DC-ADM 802 § 3.A.2-8.  Inmates with AC status are housed in the RHU which is more commonly known as solitary confinement. DC-ADM 802 § 3.A.2.  The RHU houses inmates both confined to AC status and inmates being housed in solitary confinement for disciplinary reasons.

The DOC has established and implemented a policies and procedures manual with respect to AC procedures, referred to as the DC-ADM. DC-ADM 802 *effective* November 19, 2013 (ECF No. 83-1, p.1-19).  An inmate can be confined to AC status for myriad reasons.  For example, inmates can be confined to AC status if their presence in general population constitutes a "threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility[,]" or if there are "no records and/or essential information" available to "determine

the inmate's custody level or housing needs." DC-ADM 802 § 1.A.1.a-k.  Pertinent here, where an inmate is "being held temporarily for another authority and is not classified for the general population of the holding facility" the inmate may be confined to AC status. DC-ADM 802 § 1.A.1.h.  However, if the inmate is a "Parole Violator," or a temporary transfer from another facility, the inmate is "eligible for release to general population[.]" *Id.*

DC-ADM 802 also establishes requirements for administrative review of an inmate's AC status.  An inmate should receive an initial hearing by the PRC which explains the reasons for the inmate's placement in AC status. DC-ADM 802 § 2.A.2, 5.  There is also an appeal process for the inmate to challenge the PRC's decision. *Id*. at § 2.C.  An inmate's AC status must be reviewed by the PRC "every seven days for the first two months." *Id*. at § 2.D.1.  Likewise, "[e]ach inmate in AC status shall be seen weekly by his/her counselor." *Id*. at § 2.D.2.  The inmate's unit management team must review the inmate's AC status "after 30 days and every 30 days thereafter." *Id*. at § 2.D.3.  These periodic reviews are also subject to the appeal process established in DC-ADM 802 § 2.C.  In addition to periodic reviews by prison officials, when an inmate's confinement to AC exceeds thirty days, "[a] qualified psychologist or psychiatrist shall personally interview and conduct an assessment" of the inmate. *Id*. at § 2.D.7.  If the inmate's AC status is prolonged, "a mental health assessment [shall] be completed at least every 90 calendar days." *Id*.

**Plaintiff's Post-Traumatic Stress Disorder ("PTSD") and opiate dependence**

Prior to being incarcerated at SCI-Mercer, Plaintiff alleges that he was diagnosed with PTSD caused by his military service in the Iraq war.  Additionally, prior to his incarceration at SCI-Mercer, he was enrolled at a methadone clinic to treat his opiate dependence.  During his intake at SCI-Mercer, Plaintiff reported to prison officials that he was diagnosed with PTSD and anxiety and communicated to prison officials that his current medications were 70mg of

4

methadone and 10mg of Valium and indicated that his past withdrawal symptoms were extreme. Additionally, Plaintiff told Defendant Lt. McFadden at some point during his incarceration that he suffered from PTSD.

### Plaintiff's confinement at SCI-Mercer

Upon being initially received at SCI-Mercer on December 30, 2013, Plaintiff was physically observed and evaluated. The evaluation noted several minor injuries and recorded that Plaintiff was concerned about withdrawal because he was taking methadone. The receiving officer recommended that Plaintiff be placed in AC following his medical clearance.

Later that day, a report was issued by prison officials which indicated that Plaintiff had never been confined in DOC and there were no records relating to Plaintiff's background to determine his custody level or housing needs. The report indicated that Plaintiff would be housed in the infirmary isolation cell until medically cleared for RHU placement. The report also indicated that Plaintiff's RHU placement would be pending PRC review. According to Defendant Whitman, because Plaintiff was an out-of-state parole violator with a detainer from New York, it was up to the governing bodies in New York to determine to charge and sentence him on the new charges and place Plaintiff back on parole supervision or to extradite him back to New York to serve more time there.

On January 3, 2014, the Program Review Committee ("PRC") met with Plaintiff while he was in the infirmary and held a hearing on Plaintiff's inmate status. The PRC included Defendants Sauers and Mahlmeister. The PRC is charged with the authority to determine where an inmate will be housed within SCI Mercer. An inmate's opportunity to make a request to the PRC or voice a grievance is when the inmate is seen by the PRC. When an inmate voices a concern or grievance, the PRC is obligated to investigate it and the PRC must follow up on an inmate's request to leave

the RHU.  Plaintiff contends that the PRC members stood in the doorway of the infirmary and he did not understand what the PRC members were saying because he was going through Methadone withdrawal.  According to DOC records, the PRC at that time told Plaintiff that he would be moved to the RHU upon medical release pending transfer to New York authorities and provided him with a copy of the decision.  Additionally, the decision noted that Plaintiff was present for the hearing, reported his dietary, exercise and medical needs were being met and he reported no concerns. While DC-ADM 802 provides that any inmate whose presence in general population would constitute a threat to that inmate, other inmates or staff must be placed on AC status, Plaintiff denies that his presence constituted any of those threats and that he should have been released to general population.  To this point, Lt. McFadden testified that he tried to get Plaintiff "out of there [*i.e.*, RHU] because [he] thought [Plaintiff] would be all right if they shipped him to A block, but that wasn't [his] decision." McFadden Dep. (ECF No. 89-3 at 8) 28:3-7.

That same day, Plaintiff was evaluated by medical staff and cleared for placement in the RHU.  Thereafter, Plaintiff was escorted to the intake section of the RHU and processed.  It was noted that Plaintiff was "[i]nvolved with [p]sychology and psychiatric services.  Is taking medication as prescribed.  Denies any harm to self of others. No self-injurious behaviors reported." Defs.' SMF Ex. 9.  Plaintiff was placed in an observation cell because he was still being tapered off medications with significant side effects and Lt. McFadden testified that Plaintiff did not indicate to him that he had any mental health concerns at that point.  That same day, Plaintiff was evaluated by psychology staff who reported no safety or security concerns.  Plaintiff remained in the observation cell until January 5, 2014 and was transferred to a cell in the AC side of the RHU.

The PRC conducted weekly reviews for the first two months of Plaintiff's confinement, with reviews conducted on January 9, 16, 23, 30, February 6, 13, and 20, 2014.  These reviews did

not include Plaintiff.  The PRC concluded after each of these reviews that based upon Plaintiff's

status as an out-of-state parole violator, he would remain on AC status pending transfer to New

York authorities.

During Plaintiff's confinement, the unit team conducted several 30-day reviews as

mandated by DC-ADM 802 which took place on January 27, 2014, February 25, 2014, March 27,

2014, April 23, 2014, May 23, 2014, June 24, 2013 and July 23, 2014.  Defendant Whitman

participated in these reviews.  Plaintiff denies that these procedures provided him with any

meaningful review of his placement in AC status and that the PRC simply "copy and pasted" its

initial review in later reviews.

Based on DOC records, the PRC also conducted two 90-day reviews of Plaintiff's RHU

placement, one on March 27, 2014 and another on July 17, 2014.[2]  The PRC reports reflect that

Plaintiff was present for the reviews and he advised the PRC "that his dietary, exercise and medical

needs are being met" and that "[h]e has no concerns to note." Defs.' SMF Ex. 21a (ECF No. 82).

The reviews also indicated that Plaintiff was informed that "he will remain in AC status pending

the outcome of charges in New York." *Id*. Plaintiff disputes that he met with the PRC in March

2014 but admits he met with the PRC in July 2014. (ECF No. 88 at ¶ 53).

During the totality of his confinement at SCI Mercer, Plaintiff cumulatively spent 148 days

in the RHU, with the longest stint being 82 days from December 30, 2013 to March 21, 2014.

Plaintiff's Pennsylvania criminal charges were resolved in June 10, 2014.  Thereafter,

Plaintiff was returned to the RHU and confined there until August 12, 2014 when the New York

---

[2]     Additionally, according to DOC records, there was a delay in the 90-day hearing due to
Plaintiff being "ATA." (ECF No 83-1 at 84).  It is unclear what this designation refers to, but
because Plaintiff does not claim that his due process rights were violated for failure to receive a
timely hearing, this fact is not material and included only for explanatory purposes.

authorities determined it would not return Plaintiff to New York and Plaintiff was released from custody.

The court previously granted summary judgment to Plaintiff's Eighth/Fourteenth Amendment denial of medical care claim and all claims alleged against Defendant Prenatt. Plaintiff's remaining claims relate to the assertion that his civil rights were violated by numerous DOC officials by having a policy or practice of confining inmates who have mental illness to administrative custody/solitary confinement and for violating his procedural due process rights by confining him to the RHU with no meaningful review process.  The court ordered supplemental briefing on certain discrete issues not fully briefed in the original motion as previously outlined. The remaining issues are now fully briefed and ripe for disposition.

### III.   STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

## IV.   DISCUSSION

As previously mentioned, Plaintiff's remaining claims are (1) a violation of the Eighth/Fourteenth Amendment's proscription against cruel and unusual punishment for Corrections Defendants' policy or practice of housing inmates with mental health conditions in solitary confinement (Counts I and III); and (2) a Fourteenth Amendment's procedural due process claim related to Plaintiff's inability to meaningfully challenge his placement in AC due to his status as an out-of-state parole violator (Count IV).

a.  *Qualified immunity*

Qualified immunity is a judicially created doctrine that shields certain public officials from civil liability for civil rights violations if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted).  Qualified immunity applies if there is no constitutional violation under the facts of the case, or even if there is a constitutional violation, the law was not clearly established certifying that the alleged misconduct was unlawful at the time of the constitutional violation. *Id.* at 233.

A clearly established constitutional right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted).  "When considering whether a right was clearly established, our 'focus is on whether the officer had fair notice that her conduct was unlawful,' so 'reasonableness is judged against the backdrop of the law at the time of the conduct.' " *El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020) (quoting *Kisela v. Hughes*, —— U.S. ——, 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018)) (additional citations omitted).  This does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).  Plaintiff "may show that a right is clearly established by pointing either to cases of controlling authority in their jurisdiction at the time of the incident or to a consensus of cases of persuasive authority." *El*, 975 F.3d at 339 (internal quotation marks, alterations and citations omitted).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Mullenix v. Luna*, —— U.S. ——, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

i.  Cruel and unusual punishment

While "the Eighth Amendment does not apply directly to pre-trial detainees[,] . . . the Due Process Clause of the Fourteenth Amendment provides pre-trial detainees at least as much protection for personal security as the level guaranteed to prisoners by the Eighth Amendment." *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017).

As aforementioned, even if an official's conduct can be considered unconstitutional, qualified immunity protects officials unless they had fair notice at the time that their conduct was unlawful.  Plaintiff argues that it is clearly established that "placing inmates with preexisting serious mental health conditions in prolonged solitary confinement – whatever their inmate status – violates their constitutional rights" as it constitutes cruel and unusual punishment. (ECF No. 103 at 3).  In support of this assertion, Plaintiff argues that courts across the country have recognized such a claim, citing *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995); *Washington-El v. Beard*, No. CIV.A. 08-1688, 2011 WL 891250 (W.D. Pa. Mar. 11, 2011), *aff'd*, 562 F. App'x 61 (3d Cir. 2014); *Spencer v. Courtier*, No. CA 09-124, 2011 WL 2670198 (W.D. Pa. May 23, 2011*), report and recommendation adopted*, No. 1:09-CV-124-SJM-SPB, 2011 WL 2669053 (W.D. Pa. July 7, 2011); *Ruiz v. Johnson*, 37 F. Supp. 2d 855 (S.D. Tex. 1999), *rev'd and remanded on other grounds Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001); *Jones "El v. Berge*, 164 F. Supp. 2d 1096 (W.D. Wis. 2001); *Walker v. State*, 68 P.3d 872 (Mont. 2003); *Braggs v. Dunn*, 257 F. Supp. 3d 1171 (M.D. Ala. 2017); and *Graves v. Penzone*, No. CV-77-00479-PHX-NVW, 2019 WL 201412 (D. Ariz. Jan. 15, 2019).

While other district courts have recognized an Eighth Amendment violation[3] for placing seriously mentally ill inmates in solitary confinement or administrative custody prior to the

---

[3]        And by extension, a Fourteenth Amendment substantive due process violation for pretrial

conduct alleged by Plaintiff in this case, the cases cited by Plaintiff to support his position that the right was clearly established falls short of showing a robust consensus of persuasive authority on this issue at the time the conduct occurred. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011).  The cases cited by Plaintiff are a sampling of non-binding district court cases and one state supreme court case.  This does not support a finding that a robust consensus of persuasive authority exists, because such an analysis is reserved for situations in which other Courts of Appeal have addressed the specific right asserted by a plaintiff. *El v. City of Pittsburgh*, 975 F.3d 327, 339 (3d Cir. 2020).

Of note, the only case cited by Plaintiff coming from this district is *Washington El*, where the court found that the inmate had stated an Eighth Amendment cruel and unusual punishment claim by alleging he was placed in prolonged solitary confinement and suffered from serious mental illness. 2011 WL 891250, at *3.  While this case was appealed to the Court of Appeals for the Third Circuit, the appeal did not address the merits of Washington-El's conditions of confinement claim related to his solitary confinement claim and was not binding precedent. *Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014); *El*, 975 F.3d at 340 (unpublished opinions from courts of appeal cannot establish a right).  At least one court when asked to decide this same issue and examining these same supporting cases, found that there was no clearly established right for inmates experiencing mental health issues to be housed outside of solitary confinement or administrative segregation. *Clark v. Coupe*, No. 1:17-CV-00066-RGA, 2019 WL 2098358, at *1 (D. Del. May 14, 2019).

---

detainees who are afforded at least as much, if not more, protection under the Eighth Amendment. *See infra* footnote 4.

The lack of controlling authority at the time of the incident and the lack of a consensus of persuasive authority placing the issue beyond debate, requires this court to find that Plaintiff has not identified a clearly established right related to placing inmates with mental health conditions in administrative custody.  Accordingly, Corrections Defendants are entitled to qualified immunity and summary judgment is entered in their favor for Plaintiff's Fourteenth Amendment substantive due process claim.

### ii.  Procedural due process

For courts analyzing a procedural due process claim pursuant to the Fourteenth Amendment, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).  Once a court determines "that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).  "The Supreme Court has repeatedly stated that '[t]he core of due process is the right to notice and a meaningful opportunity to be heard.' " *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998)).  Under the procedural due process clause, "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [restricted housing] without explanation or review of their confinement." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007).[4]  Where as here, a pretrial detainee is being held in administrative custody for

---

[4]     Because Plaintiff was held in custody as an out-of-state parole violator for the entirety of his incarceration, for constitutional purposes, he is considered a pretrial detainee. *See U.S. v. Dobson*, 585 F.2d 55, 59 (3d Cir. 1978) ("a parole violator is no different than a pretrial detainee

"administrative" reasons as opposed to for disciplinary reasons, "the minimal procedures outlined in *Hewitt[v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983),] are all that is required." *Stevenson*, 495 F.3d at 70-71 (citation omitted). To this end,

> [a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

*Hewitt*, 459 U.S. at 476.  While the process promulgated in *Hewitt* applies to sentenced inmates, it provides "a floor for what pretrial detainees may expect." *Stevenson*, 495 F.3d at 69.

Plaintiff alleges that his Fourteenth Amendment procedural due process rights were violated when he was indefinitely detained in administrative segregation and was given no meaningful procedural protection because the periodic reviews of his custody status were merely perfunctory.  Specifically, Plaintiff points to DC-ADM 802 which states that out-of-state parole violators are eligible for placement in general population pending PRC review.  Notwithstanding that policy, Plaintiff alleges that Corrections Defendants applied it unconstitutionally to him by giving him no meaningful way to challenge his administrative custody status.  For example, Defendant Sauers, who was a PRC member responsible for Plaintiff's reviews, testified that Plaintiff was not eligible for release to general population for any reason. (ECF No. 103 at 11). Additionally, Defendant Thompson testified that the length of Plaintiff's placement in

---

who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment."); *Rosario v. Strawn*, No. CV 19-1040, 2020 WL 6730975, at *6 (W.D. Pa. July 29, 2020), *report and recommendation adopted*, No. 2:19-CV-01040, 2020 WL 5810009 (W.D. Pa. Sept. 30, 2020) (same).

administrative custody was undetermined. *Id*.  Likewise, Defendant McFadden testified that out-of-state parole violators, such as Plaintiff, are not removed from administrative custody until the out-of-state charges are dismissed. *Id*.

Corrections Defendants argue that they are entitled to qualified immunity as to this claim because "there has been no case decided which has clearly established that the [procedural] due process protections established by the DOC's DC-ADM 802 policy for inmates confined in Administrative Custody status – which creates a procedure whereby an inmate's status is assessed every 90 days through periodic reviews – violates the [procedural] due process clause, even where the inmate claims that such reviews are perfunctory or cursory." (ECF No. 102 at 11).  Corrections Defendants cite to three cases to support this proposition: *Washington-El v. Collins*, No. 3:12-CV-1979, 2015 WL 1035036 (M.D. Pa. Mar. 10, 2015); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir.2000), and *Huertas v. Sec'y Pennsylvania Dep't of Corr.*, 533 F. App'x 64, 67 (3d Cir. 2013).

As a preliminary matter, Corrections Defendants mischaracterize Plaintiff's due process claim as asserting a facial attack on the prison policies at issue.  Plaintiff does not argue that the prison policy as written violated his constitutional rights, but instead argues that how that policy was applied to him resulted in a due process violation. (ECF No. 103 at 6).

Next, Corrections Defendants' assertion that no court has found that perfunctory reviews of a pretrial detainee's custody status violate the inmate's due process rights is incorrect.  The Court of Appeals for the Third Circuit explicitly found to the contrary in *Sourbeer v. Robinson*, 791 F.2d 1094, 1102 (3d Cir. 1986), finding that perfunctory reviews of a pretrial detainee's status in administrative custody supports a finding that the inmate was not provided meaningful process under the Due Process Clause.  In *Sourbeer*, the plaintiff was convicted of a crime, but not yet sentenced and was confined to SCI-Camp Hill as a pretrial detainee. *Id*. at 1096.  Upon his arrival,

he was classified as a "Hold for Various Authorities" ("HVA") prisoner because of his unsentenced status and was placed in the restrictive housing unit in "administrative custody." *Id*. Under the prison policies, the plaintiff was to receive periodic review hearings to determine whether he should remain in administrative custody and received those reviews in accordance with the policy. *Id*. at 1097-99. Upon review of his administrative custody status, the prison officials noted that he was to remain in administrative custody for various reasons, including because of his HVA/unsentenced status. *Id*. at 1098. The court noted that although the policy of having periodic reviews of the administrative custody status of unsentenced inmates/detainees facially passed constitutional muster, and that there is was no evidence that prison officials varied from these policies, there was evidence that Sourbeer's due process rights were nonetheless violated because prison officials applied these reviews in a rote and perfunctory way, denying Sourbeer of a meaningful opportunity to be heard. *Id*. at 1101. The court noted: "[t]o [e]nsure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the [F]ourteenth [A]mendment." *Id*. (quoting *Mims v. Shapp*, 744 F.2d 946, 954 (3d Cir. 1984). The court found that while prison officials included reasons such as a "bad attitude" and his "personality," for keeping Sourbeer in administrative custody, those reasons alone, without evidence of misconducts or psychiatric or psychological evaluations could not justify his placement in administrative custody. *Id*. at 1101-02. Dismissing those unsupported reasons, the court found that prison officials placed and kept Sourbeer in administrative custody simply because of his status as an unsentenced status. *Id*. at 1102. This reason was even more pronounced because shortly after Sourbeer was sentenced, he was transferred into general population. *Id*. The Court of Appeals found that Sourbeer was not afforded meaningful process in violation of the Due Process Clause. *Id*.

The facts underlying *Sourbeer* are substantially similar to the facts in the instant case. Plaintiff was a pretrial detainee who was being held as an out-of-state parole violator.  The prison policy applying to out-of-state parole violators states that a parole violator would be held in administrative custody but is eligible for release to general population. DC-ADM 802 §1.A.1.h. Plaintiff was provided periodic reviews of his administrative custody status, each resulting in him remaining housed in administrative custody because of his status as an out-of-state parole violator. Considering the testimony from prison officials, it is reasonable to infer that Plaintiff would have under no circumstances been transferred out of administrative custody solely because of his status as an out-of-state parole violator.  Plaintiff had no history of misconducts or any other reason for being placed in administrative custody.  Additionally, after the charges underlying Plaintiff's parole violation were dismissed, Plaintiff was released from custody.  Based on the findings in *Sourbeer*, there is enough evidence to support a finding that Plaintiff was not afforded meaningful process, as the reviews of his administrative custody were rote and perfunctory.

Further, Corrections Defendants are not entitled to qualified immunity, as *Sourbeer* was decided in 1983, cited for this proposition for decades by the Court of Appeals for the Third Circuit and our sister courts, and this court has found no case specifically overruling its holding. *See Shoats*, 213 F.3d at 146; *In re City of Philadelphia Litig*., 49 F.3d 945, 971 (3d Cir. 1995); *Sample v. Diecks*, 885 F.2d 1099, 1115 (3d Cir. 1989); *Allah v. Bartkowski*, 574 F. App'x 135, 140 (3d Cir. 2014); *Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014); *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 465–66 (3d Cir. 2008); *Talbert v. Carney*, No. CV 18-1620, 2018 WL 3520676, at *4 (E.D. Pa. July 20, 2018); *Getch v. Rosenbach*, 700 F. Supp. 1365, 1375 (D.N.J. 1988).  It is reasonable that every prison official would have known and been on fair notice

that providing Plaintiff with a perfunctory review of his administrative custody status could be considered unconstitutional.

Turning to the cases cited by Corrections Defendants, each is distinguishable on the merits. In *Washington-El v. Beard*, 562 F. App'x 61, 63 (3d Cir. 2014), the court found that the inmate had not stated a procedural due process claim for his placement in administrative custody because he was provided all of the periodic reviews under prison policy and was placed in administrative custody because he was classified as an escape risk. *Id*. The court specifically found that his reviews were not perfunctory because the officials "considered the status of an investigation concerning a possible escape plan involving Washington-El, reviewed the results of that investigation, assessed whether to recommend Washington-El for release to the general population, and responded to his arguments for release from administrative custody." *Id*.

In *Huertas v. Sec'y Pennsylvania Dep't of Corr*., 533 F. App'x at 67, the court found that an inmate's administrative custody status did not violate his procedural due process rights because he received periodic reviews in accordance with DOC policy and prison officials justified his continued administrative custody because of continuing security concerns, including the inmate's attempt to escape from custody, history of misconducts, and information that the inmate directed a "hit" on another inmate who had thereafter been stabbed six times. *Id*. at 65-68.

Finally, in *Shoats*, while the court found that a convicted inmate stated a liberty interest in not being held in administrative custody for eight years, his continued administrative custody status did not violate his procedural due process rights because he received periodic reviews in accordance with DOC policy and prison officials justified his continued administrative custody because they considered him "a current threat to the security and good order of the institution, and to the safety of other people." 213 F.3d at 146. The court also noted that plaintiff was not

challenging whether his process was meaningful: "Shoats does not argue that he was denied the opportunity to respond or be heard, nor does he argue that the prison authorities failed to consider favorable information **or that they otherwise dealt with his case in a perfunctory fashion**." *Id.* (citing *Sourbeer*, 791 F.2d at 1101) (emphasis supplied).  Accordingly, no case cited by Corrections Defendants support the proposition that a perfunctory review of an inmate's custody status does not violate due process.

Accordingly, Corrections Defendants' motion for summary judgment on Plaintiff's procedural due process claim is denied.

### b. *Supervisory Liability Claim against Secretary Wetzel*

Secretary Wetzel argues he is entitled to summary judgment because he is sued only in his official capacity and because Plaintiff was released from custody and no longer under supervision, declaratory and injunctive relief is no longer available.  Plaintiff responds that while his second amended complaint explicitly states that he is suing Secretary Wetzel in his official capacity for declaratory and injunctive relief, he should be afforded leniency because considering the totality of his allegations in his operative complaint, he has asserted individual capacity claims under his remaining claims against Secretary Wetzel.  Plaintiff is not proceeding pro se and has had counsel since the inception of this case.  Notwithstanding that the plain language of the operative complaint drafted by counsel does not include individual capacity claims against Secretary Wetzel, even if it had, such a claim would fail.

A prison official may be responsible under 42 U.S.C. § 1983 if the plaintiff identifies the following elements: (1) a specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that

this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).  "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample*, 885 F.2d at 1118.

For the remaining claim – a violation of Plaintiff's procedural due process rights – Plaintiff argues that Secretary Wetzel is responsible as a policymaker.  The entirety of Plaintiff's claim against Secretary Wetzel is as follows: "Defendant Wetzel is the top policymaker for the DOC and that, through his policymaking in this case, [he] caused Plaintiff to be subjected to constitutional violations" (ECF No. 103 at 2) for "knowingly promulgat[ing] and enforc[ing] a policy that would place all out-of-state parole violators . . . in indefinite solitary confinement with no exceptions." (ECF No. 105 at 4).[5]  Plaintiff has offered no evidence that Wetzel knew that Plaintiff as an out-of-state parole violator was being kept in administrative custody and would never be released to general population, contrary to prison policy which outlined that parole violators were eligible for release to general population.  Plaintiff cannot support his claim with legal conclusions and unsupported factual averments. *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir.1985). *See also Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Accordingly, Secretary Wetzel is entitled to summary judgment on Plaintiff's supervisory liability claim.

---

[5]     To the extent that Plaintiff alleges constitutional violations related to his substantive due process claim, Secretary Wetzel cannot be held liable under a supervisory liability theory for this claim because there is no underlying violation. *See Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (a supervisory liability claim "necessarily includes as an element an actual violation at the hands of subordinates").

     *c.   Compensatory Damages*

Corrections Defendants argue that because Plaintiff has failed to adduce evidence that he suffered any physical injury as a result of the conduct alleged as required under the Prison Litigation Reform Act, 42 U.S.C. §1997e, ("PLRA"), they are entitled to judgment on Plaintiff's claim to recover compensatory damages. (ECF No. 81 at 6-7).  Plaintiff responds that he has alleged a more-than-de minimis physical injury, and because he was forced to remain in administrative custody, he suffered from insomnia, headaches, pain from being in cold and required to take cold showers, back pain due to the lack of sleep and sleeping on hard surfaces.[6]

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir.2003).  While the PLRA does not define what constitutes a "physical injury," the Court of Appeals for the Third Circuit, along with other Circuit Courts, have determined that the physical injury must be less than significant but more than de minimis. *See Mitchell*, 318 F.3d at 536; *Perez v. U.S.*, 330 Fed.Appx. 388, 389 (3d Cir. 2009) (citing various cases from other circuits and other district courts that have defined de minimis physical injuries).

Other courts have determined that the type of injury that Plaintiff alleges here, i.e., headaches, insomnia, backpain and being cold, without more, are de minimis physical injuries and cannot support a basis for compensatory damages. *Watson v. Wingard*, No. 3:16-CV-00055, 2018 WL 2108316, at *4 (W.D. Pa. Jan. 31, 2018), *report and recommendation adopted*, No. CV 16-55J, 2018 WL 2107773 (W.D. Pa. May 7, 2018), *aff'd*, 782 F. App'x 214 (3d Cir. 2019) (an "upper

---

[6]    Plaintiff also argues other physical injuries that are not relevant to this analysis related to allegedly deficient dental care and withdrawal symptoms he experienced.

cut to [plaintiff's] groin" causing him "to bend over in pain" and "be on bed rest for a few days" constituted a de minimis physical injury); *Brooks v. Smith*, No. 3:CV-04-2680, 2007 WL 3275266, at *2 (M.D. Pa. Nov. 6, 2007) (headaches from the stress of inmates confinement in a restrictive housing unit was a de minimis physical injury); *Mitchell v. Horn*, No. Civ.A.98-4742, 2005 WL 1060658, at *1 (E.D. Pa., May 5, 2005) (on remand, the district court found that severe stomach aches, severe headaches, severe dehydration, loss of weight, severe itching, nausea, physical weakness and blurred vision were de minimis physical injuries); *Cloud v. Goldberg*, C.A. No. 98–4250, 2000 WL 157159, at *5 (E.D.Pa. Feb.14, 2000) (inmate's allegation that failure to treat a medical condition resulted in "depression, insomnia, and just being in a scary frame of mind" did not satisfy the physical injury requirement of the PLRA to justify compensatory damages). Accordingly, Plaintiff has not provided any evidence of a more-than-de minimis physical injury to justify compensatory damages for his remaining claim and summary judgment is granted in favor of the Corrections Defendants in this regard.[7]

## V.     CONCLUSION

Based on the foregoing, Corrections Defendants' renewed motion for summary judgment is granted in part and denied in part.  Corrections Defendants' motion for summary judgment is granted as it relates to Plaintiff's Fourteenth Amendment substantive due process claim, Plaintiff's supervisory liability claim against Secretary Wetzel, and Plaintiff's claim for compensatory damages and denied as it relates to Plaintiff's Fourteenth Amendment procedural due process claim.

---

[7]     Of course, Plaintiff is still entitled to pursue nominal and punitive damages. *Mitchell*, 318 F.3d at 533 (a denial to allow an inmate recover compensatory damages for failing to allege a physical injury does not affect his "ability to seek nominal or punitive damages for violations of his constitutional rights.").

An appropriate Order follows.

Dated: January 26, 2021.                                      By the Court,
                                                             s/ Cynthia Reed Eddy
                                                             Chief United States Magistrate Judge